[No. 12668.    Department One.— June 2, 1890.]

NANCY J. HART, RESPONDENT, v. O. J. MEAD, SHERIFF, ETC., APPELLANT.

STATUTE OF FRAUDS — DELIVERY AND CHANGE OF POSSESSION FROM FATHER TO DAUGHTER — SALE OF INTEREST IN CATTLE RUNNING AT LARGE. — Evidence which tends to show a *bona fide* sale for value by a judgment debtor to his daughter, though living in his household, of an interest in cattle running at large, on a range of very considerable extent, without notice to the daughter of the existence of the debt, and that immediately after the sale the daughter assumed control of such interest, and performed all the duties which would pertain to a man similarly circumstanced, having charge of and owning a like interest in cattle running on such a range, and that she notified all the co-owners as well as other persons of her purchase, and secured a division of the cattle, and received and retained control and care of her share of the cattle, after division, as fully and assiduously as a man would take care of his own cattle in a like case, is sufficient to warrant the jury in believing that the sale was in fact *bona fide* and accompanied by an immediate delivery, and followed by an actual and continued change of possession, and in sustaining the validity of the sale as against the judgment creditor of the father.

APPEAL from a judgment of the Superior Court of Mariposa County.

The facts are stated in the opinion.

*J. W. Congdon,* for Appellant.

*G. G. Goucher, Newman Jones,* and *R. B. Stolder,* for Respondent.

FOOTE, C. — This action was brought by the plaintiff, Nancy J. Hart, to recover of the defendant, as the sheriff of Fresno County, certain cattle alleged by the plaintiff to be her property and wrongfully taken on an execution against her father, A. W. Bolton, or the value thereof.

The cause was tried before a jury, who found a verdict for the plaintiff for the recovery of twenty-three head of cattle, or for the sum of $575 if recovery of the property in dispute could not be had. Judgment thereupon followed.

Upon motion, the court granted a new trial conditionally, that is, unless the plaintiff would consent to a modification and reduction of the judgment to the sum of $414; which consent, as required, being given, and the modification made, a new trial was not awarded. From the order made in the premises, and from the judgment, the defendant has appealed.

The contention of the defendant is in the main that,— 1. The evidence did not justify the jury in finding the sale of the cattle in dispute to the plaintiff from her father, A. W. Bolton, the judgment debtor, to be *bona fide,* under the provisions of section 3439 of the Civil Code; and 2. That, supposing the sale to have been shown to be in fact untainted with fraud, the conditions imposed by section 3440 of the Civil Code were not sufficiently complied with, under the evidence, to justify the jury in finding the sale of the property involved here to the plaintiff by A. W. Bolton to have been valid.

The plaintiff, it seems, was a young widow, who had

been living in the household of her father, A. W. Bolton, most of the time since January, 1885.

She testified that the cattle in dispute were in her possession on the twentieth day of January, 1887, the date of the levy of an execution on a judgment against her father and in favor of his creditor, Mr. Reid; that she had bought them from her father on the 2d of September, 1885; that the cattle at that time were part of an undivided band known as the "pot-hook" band of cattle, owned in undivided shares by J. J. Westfall, a half-interest, J. R. Westfall, and A. W. Bolton, each an undivided one-fourth interest.

She bought the interest of Bolton in the cattle, and also, in addition, two saddle-horses, and a mare and two colts. For the whole property she executed her note for eight hundred dollars and received a bill of sale for it. This bill of sale was recorded by her on the 16th of September, 1885, in book G of the miscellaneous records of Mariposa County, the range of the cattle being in both that and Fresno counties. Nothing except the cattle is involved in this suit.

Her father at the time of this sale owed her $199.81, which was at once credited on this note; said amount was made up of $80 for a horse she had sold him, $15 she had paid for him at a store, and $104.81 which she paid for him to Dr. Turner on the day of the sale of the cattle, this last amount being for some hogs coming to her from her husband's estate, which she gave to Turner, and by the 2d of November, 1886, she had paid up the whole amount of the note.

It appears that she began, as soon as she purchased the cattle, to ride around and look after them, as they ran upon the range, just as her father had previously done, and that she performed from that time on all the duties which would pertain to a man similarly circumstanced, and in charge of and owning an interest in cattle run on a range of very considerable extent.

At the time of her purchase she owned some other property, exclusive of that coming to her from her deceased husband's estate, viz., some horses and about sixteen head of hogs. She also had delivered to her by her father the branding-iron pertaining to this band of cattle, and branded calves with it. On the 21st of November, 1885, she sent a written notice to the Westfalls, who were joint owners with her of the band of cattle, that she had purchased her father's interest in them, and seems also to have made this fact known to such other persons as she saw. She stated further that at the time of the purchase from her father she did not know that he was indebted to Mr. Reid. She thus succeeded her father at once in the care of the cattle, and looked after them as they were upon the range at the time of the purchase, as he had previously done as part owner thereof, and continued to be thus in control of them until about the 25th of April, 1886, when a *rodeo* was had, at which the cattle were gathered up by the parties interested, and those called on to assist at it, and divided out between the plaintiff and the Westfalls, she assisting to gather them up and being present at the division. The cattle were in charge of her father and J. R. Westfall when she bought, they having gotten them from J. J. Westfall on shares.

The notice which she sent to the Westfalls as to her purchase also stated that she having bought her father's interest in the cattle, they must sell no more of them until a division could be had, and that they would have to settle with her for her share of what they had sold since her purchase, and that she had appointed her father her agent to look after the cattle, but her father did not act under that authority except some time in December, 1885, when, riding over the range, he would turn the cattle back if he found them straying off the range, as he would do for any one else.

Her father states: " We commenced gathering cattle

for the *rodeos* about the 11th of March, and kept on until May 14, 1886. The first division of cattle between J. J. Westfall, J. R. Westfall, and plaintiff took place near the Hart cabin about April 25th. I have been in the cattle business about fourteen or fifteen years; *rodeos* are usually held from March to May. After the time when I sold the cattle to plaintiff (September 2d) a *rodeo* could not be held until the spring of 1886, as the cattle and horses would be too weak until the grass was good in the spring."

The plaintiff is corroborated in the main portion of her testimony as to the immediate acts of possession and ownership which she exercised over the cattle, as changed from that of her father, and the steps which she took to notify others of the change of ownership from her father to herself, by sundry witnesses.

It further appears that Bolton, for some time previous to the sale, had been endeavoring to sell his interest in this band of cattle, in order to wind up his business and quit horseback riding, and try to pay all his creditors, who were not many, nor the amounts due them large, and probably not more than what he owned would suffice to pay; that the plaintiff here did not know he owed Reid (the plaintiff in the execution); that it was uncertain at the time of the sale what the interest in the running cattle would be worth; that she seems to have received at the *rodeo* something over thirty head of cattle, to have driven them off and taken care of them mainly in person from that time on to the date of the levy, and to have been as assiduous in her attention to them as a man would be of his own in a like case. From these facts, and circumstances surrounding the whole transaction, beside those previously stated, and others which appear in the record, and considering the conditions attending the *status* of the property sold, we cannot say that the jury were not warranted in believing that the sale of the cattle was in fact *bona fide*, and accom-

panied by an immediate delivery, and followed by an actual and continued change of possession, under the terms of sections 3439 and 3440 of the Civil Code.

We perceive no error of the court in its action upon the giving, refusing, or modification of the instructions, nor is there any other prejudicial error shown by the record. We therefore advise that the judgment and order be affirmed.

VANCLIEF, C., and GIBSON, C., concurred.

The COURT. — For the reasons given in the foregoing opinion, the judgment and order are affirmed.